UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

SECURITIES AND EXCHANGE COMMISSION,

Plaintiff,

v.

BRADLEY MORGAN HOLTS,

Defendants.

Case No.: 1:23-cv-81

Jury Trial Demanded

**COMPLAINT AND JURY TRIAL DEMAND**

Plaintiff Securities and Exchange Commission (the "SEC") alleges as follows for its Complaint against Defendant Bradley Morgan Holts ("Holts" or "Defendant"):

**SUMMARY**

1. Holts, while a registered representative associated with a broker-dealer based in Denver, Colorado (the "Broker-Dealer"), misappropriated $186,382 from three elderly investor customers (the "Three Investors"). Holts falsely told these investors that he would invest their money in securities of mutual funds offered by investment management firm Invesco Ltd. ("Invesco"). In fact, Holts stole the investors' money and used the money to pay personal expenses, including for clothing, tanning salons, adult and dating websites, and a divorce lawyer.

2. The Three Investors have never been repaid.

3. As a result of the conduct described herein, Holts violated, and unless restrained and enjoined will continue to violate, the anti-fraud provisions of Section 17(a) of the Securities

Act of 1933 (the "Securities Act") [15 U.S.C. § 77q(a)], Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

4.  The SEC seeks entry of a permanent injunction against Defendant enjoining him from future violations of the anti-fraud provisions of the federal securities laws, disgorgement of Defendant's ill-gotten gains from the unlawful activity set forth in this Complaint under Sections 21(d)(3), (5), and (7) of the Exchange Act [15 U.S.C.§ 78(d)(3), (5), and (7)] together with prejudgment interest, civil penalties under Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)] and Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)], and such other relief that the Court may deem appropriate.

## JURISDICTION AND VENUE

5.  This Court has jurisdiction over this action pursuant to Sections 20(b), 20(d), and 22(a) of the Securities Act [15 U.S.C. §§ 77t(b), 77t(d), and 77v(a)] and Sections 21(d), 21(e), and 27 of the Exchange Act [15 U.S.C. §§ 78u(d), 78u(e), and 78aa].

6.  Defendant, directly or indirectly, made use of the means or instruments of transportation or communication in interstate commerce, the means and instrumentalities of interstate commerce, or of the mails, in connection with the acts, practices, and courses of business set forth in this Complaint.

7.  Venue lies in this Court pursuant to Section 22(a) of the Securities Act [15 U.S.C. § 77v(a)], Section 27 of the Exchange Act [15 U.S.C. § 78aa], and 28 U.S.C. § 1391(b). Defendant resides in this district.  In addition, many of the acts, practices, transactions, and courses of business alleged in this Complaint occurred within this district.

**DEFENDANT**

8.  **Bradley Morgan Holts**, age 52, is a resident of Beaumont, Texas. Holts holds Series 7 and 66 securities licenses issued by the Financial Industry Regulatory Authority ("FINRA"), a non-governmental organization that oversees broker-dealers. From October 2020 to July 2021, Holts was associated as a registered representative, commonly referred to as a stockbroker, with the Broker-Dealer. Prior to his association with the Broker-Dealer, Holts worked for other broker-dealers and investment advisers starting in July 2010. The Broker-Dealer terminated Holts' employment on July 15, 2021.

**FACTS**

**I.   Background**

9.  Holts first met each of the Three Investors while he was working for a broker-dealer affiliate of the investors' bank ("Bank 1").

10. After Holts left the broker-dealer affiliate of Bank 1, he convinced each of the Three Investors to use him as their stockbroker, including when Holts became affiliated with the Broker-Dealer.

11. During the summer and fall of 2020, Holts received applications and funds from the Three Investors that he sent to Invesco to open investment accounts for the investors.

12. From February through May 2021 (the "Relevant Period"), the Three Investors had approximately $1.9 million, collectively, invested in Invesco mutual funds via purchases made through Holts, as their stockbroker.

**II.  Holts Opened a Bank Account Using a Deceptive Invesco Name.**

13. In furtherance of his scheme to misappropriate investor funds, on February 17,

2021, Holts opened a bank account in the name of "Bradley Morgan Holts d/b/a Invesco Investment Texas" ("IIT").

14. On the account opening application, Holts listed his home address in Beaumont, Texas as the address for ITT.

15. Holts was the only individual with signature authority over the IIT bank account.

16. The IIT d/b/a name used by Holts on the bank account is deceptively similar to Invesco's name. However, Invesco had no relationship to IIT or control over the IIT bank account.

### III. Holts Obtained Checks from the Three Investors By Misrepresenting that He Would Use the Funds to Purchase Invesco Mutual Funds for Them.

17. Holts falsely represented to the Three Investors that if they made further investments through him, he would add the funds to the investors' existing Invesco mutual fund investments.

<u>Holts' False and Misleading Statements to Investors 1 and 2</u>

18. On or before February 15, 2021, Holts verbally represented to two of the Three Investors ("Investor 1" and "Investor 2"), separately, that if they made further investments through him, then he would add the funds to the investors' existing Invesco mutual fund investments. Investors 1 and 2 both reside in Beaumont, Texas, and are 90 and 70 years old, respectively.

19. Based on those representations, on February 15, 2021, Investor 1 and Investor 2 provided checks to Holts in the amounts of $17,575 and $10,000, respectively.

20. The memo lines for the two checks provided by Investor 1 and Investor 2 each contained the word "investment" and the checks were made payable to "Invesco Investments Texas."

21. Holts deposited the two checks from Investor 1 and Investor 2 totaling $27,575 into his IIT account on February 17, 2021, as the initial deposit to open the IIT account.

22. As alleged below, Holts did not invest the money from Investors 1 and 2 with Invesco, but rather misappropriated the funds for his personal use. Holts' statements to Investors 1 and 2 regarding the intended use of their funds were material as a reasonable investor would want to know that their funds were going to be placed in Holts' personal IIT account rather than invested with Invesco, and that Holts was going to misappropriate their money.

<u>Holts' False and Misleading Statement to Investor 3</u>

23. On or before May 24, 2021, Holts verbally represented to the third of the Three Investors ("Investor 3") that if she made a further investment through him, Holts would add the funds to the investor's existing Invesco mutual fund account to increase her balance above $1 million and thereby avoid an additional Invesco sales charge. Investor 3 resides in Orange, Texas, and is 77 years old.

24. Based on Holts' representation, Investor 3 delivered two cashier's checks to Holts that totaled approximately $158,807, which checks were payable to and endorsed by Investor 3.

25. Holts deposited the two endorsed checks received from Investor 3 totaling approximately $158,807 into his IIT account on May 24, 2021.

26. At the time Holts received these funds from Investor 3, he knew that Investor 3 had previously entered into a letter of intent to invest $1 million in her Invesco mutual fund

account. Holts saw the letter of intent in the Invesco application that he prepared for Investor 3. In addition, he received a letter from Invesco, dated October 26, 2020, that confirmed the terms of Investor 3's letter of intent and stated that if Investor 3 increased her Invesco mutual funds balance to $1 million within the next 13 months, she would avoid sales charge adjustments on her Invesco mutual fund purchases.

27. At the time Investor 3 provided Holts with approximately $158,807, her Invesco account balance was approximately $850,000. The additional investment of these funds would have fulfilled the $1 million threshold to avoid incurring an additional sales charge on her purchase of the mutual fund shares.

28. As alleged below, Holts did not invest the investors' money with Invesco, but rather misappropriated the funds for his personal use. Holts' statements to Investor 3 regarding the intended use of her funds were material as a reasonable investor would want to know that her funds were going to be placed in Holts' personal IIT account rather than invested with Invesco, and that Holts was going to misappropriate her money.

**IV.  Holts Deposited Investor Funds into His IIT Bank Account and Then Misappropriated Those Funds.**

29. The statements made by Holts—that if Investors 1, 2, and 3 made further investments with him, then he would add the funds to the investors' existing Invesco mutual fund investments—were false and misleading because Holts misappropriated the investors' money, depositing the investors' funds into *his* personal IIT bank account.

30. Following the initial deposits from Investors 1 and 2, Holts spent over half of the two investors' funds by issuing two checks, each for $7,000. He did not send the funds received from Investor 1 and Investor 2 to Invesco for investments in their mutual fund accounts.

31. As alleged above, Holts deposited Investor 3's money into his IIT account in May 2021.

32. As part of his deposit of the two checks from Investor 3, Holts immediately withdrew $19,000 in cash from the IIT account. He did not send the funds received from Investor 3 to Invesco for investment in the investor's mutual fund account.

33. Because Holts deposited the four checks that he received from the Three Investors into his IIT bank account, and not an account maintained by the Broker-Dealer or Invesco, Holts was able to, and did, take control of the funds.

34. The checks provided by the Three Investors comprised approximately 99.7% of the deposits into Holts' IIT bank account between February and November 2021.

35. Holts did not use any of the investors' funds deposited in the IIT account to acquire Invesco mutual funds on the investors' behalf.

36. Instead, on the same day that each of the checks was deposited, Holts began using those investors' funds for his personal benefit.

37. While the IIT account was open, Holts withdrew over $76,000 in cash and used additional funds received from the Three Investors to pay his personal expenses, including for clothing, tanning salons, adult and dating websites, and a $5,000 payment to a divorce lawyer.

38. Holts has not returned any of the Three Investors' funds that he misappropriated.

39. As a result of Holts' fraud, his three elderly victims have lost a total of $186,382.

40. In addition, Investor 3 incurred approximately $17,150 in sales charge adjustments that would have been avoided had the funds been placed with Invesco as she intended and as Holts promised.

### V.       Holts Acted with Scienter.

41.     Holts' statements that if Investors 1, 2, and 3 made further investments through him, then he would add the funds to the investors' existing Invesco mutual fund investments were false and misleading when made.  Holts knew, or was severely reckless in not knowing, and should have known, that those statements were false and misleading.  Holts knowingly deceived the Three Investors by falsely representing that he would use their funds to add to their existing Invesco mutual fund investments when, in fact, he intended to take the investors' funds for his own personal use.

42.     Holts' intent is evidenced by his opening the deceptively named "Invesco Investment Texas" bank account within two days of accepting the checks from Investor 1 and Investor 2 and prior to accepting the checks from Investor 3.  The account name, "Invesco Investments Texas," was designed to create the false impression that the account was associated with Invesco, when it was not.

43.     After Holts submitted Investor 1's initial account applications along with two checks directly to Invesco in October 2020, the Broker Dealer sent Holts an October 15, 2020 letter stating in part, "As you are aware, our policy at [the Broker-Dealer] when taking physical checks from customers for new business or for additional purchases in pre-existing accounts, is that checks must be forwarded to [the Broker-Dealer] so we can book it here at the home office [and] then forward it on to the fund company."  Based on the October 15, 2020 letter from the Broker-Dealer, Holts knew, or was severely reckless in not knowing, and should have known, that it was the Broker-Dealer's policy to require Holts (and other registered representatives) to send the investors' original checks to the brokerage firm before forwarding the checks to

Invesco. Holts knew, or was severely reckless in not knowing, that his creation of the IIT bank account violated the Broker-Dealer's policy and Invesco's requirement that they receive original checks.

44. Further, Holts knew, or was severely reckless in not knowing, and should have known, that he had no right to take control of the investors' funds and use them to pay his personal expenses.

## VI. Holts' Misrepresentations Were Made "In the Offer or Sale" and "In Connection with the Purchase or Sale" of Securities.

45. Each of the material misstatements by Holts described above that induced investors to give Holts money were made in the offer or sale of securities as defined in Section 2(a)(1) of the Securities Act and in connection with the purchase or sale of securities as defined in Section 3(a)(10) of the Exchange Act [15 U.S.C. §§ 77b(a)(1) and 78c(a)(10)].

46. In particular, Holts made the material misstatements to Investors 1, 2, and 3 described above to induce the investors to give him money, purportedly to purchase Invesco mutual funds on their behalf.

47. Mutual fund shares are "securities" as defined by Section 2(a)(1) of the Securities Act and Section 3(a)(10) of the Exchange Act.

## VII. Unless Enjoined, Holts Will Continue to Defraud Investors.

48. Holts' misconduct described above was intentional, repeated, and egregious, causing substantial losses to his elderly victims.

49. Holts' age and lengthy employment as a stockbroker creates substantial risk that he will again victimize investors if not enjoined.

## FIRST CLAIM FOR RELIEF
### Fraud: Violation of Section 10(b) of the Exchange Act and Rule 10b-5 thereunder
**[15 U.S.C. § 78j(b) and 17 C.F.R. § 240.10b-5]**

50. The SEC realleges and incorporates by reference paragraphs 1 through 49, as though fully set forth herein.

51. By engaging in the conduct alleged above, Defendant, directly or indirectly, in connection with the purchase or sale of a security, and by use of any means or instrumentality of interstate commerce, or of the mails or of any facility of a national securities exchange, knowingly or severely recklessly: (a) employed a device, scheme, or artifice to defraud; (b) made an untrue statement of a material fact or omitted to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and/or (c) engaged in an act, practice, or course of business which operated or would operate as a fraud or deceit upon any person.

52. By virtue of the foregoing, Defendant, directly or indirectly, has violated, and unless restrained and enjoined will again violate, Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5(b) [17 C.F.R. § 240.10b-5] thereunder.

## SECOND CLAIM FOR RELIEF
### Fraud: Violation of Section 17(a) of the Securities Act
**[15 U.S.C. § 77q(a)]**

53. The SEC realleges and incorporates by reference paragraphs 1 through 49, as though fully set forth herein.

54. By engaging in the conduct alleged above, Defendant, directly or indirectly, in the offer or sale of a security by the use of the means and instruments of transportation or communication in interstate commerce or by use of the mails: (a) employed a device, scheme, or

artifice to defraud; (b) obtained money or property by means of an untrue statement of a material fact or by omitting to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and/or (c) engaged in a transaction, practice, or course of business which operated or would operate as a fraud or deceit upon the purchaser.

55. With regard to violations of Section 17(a)(1), Defendant engaged in the conduct intentionally, knowingly, or with severe recklessness. With regard to violations of the Sections 17(a)(2) and 17(a)(3), Defendant acted at least negligently.

56. By virtue of the foregoing, Defendant, directly or indirectly, has violated, and unless restrained and enjoined will again violate, Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)]

## JURY TRIAL DEMAND

The SEC demands a trial by jury on all claims so triable.

## RELIEF REQUESTED

Therefore, the SEC respectfully requests that this Court:

(a) Find that the Defendant committed the violations alleged in this Complaint;

(b) Permanently enjoin Defendant from violating Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)] and Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5], pursuant to FED. R. CIV. P. 65;

(c) Order Defendant to disgorge all ill-gotten gains received during the period of the violative conduct, plus prejudgment interest thereon, pursuant to the Court's equitable powers

and Sections 21(d)(3), 21(d)(5), and 21(d)(7) of the Exchange Act [15 U.S.C. §§ 78u(d)(3), 78u(d)(5), and 78u(d)(7)];

  (d) Order Defendant to pay civil penalties pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)] and Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)]; and

  (e) Grant such other relief as this Court may deem just and proper.

Dated: February 27, 2023

            Respectfully submitted,

            /s/ B. David Fraser
            B. David Fraser (Texas Bar. No. 24012654)
            Securities and Exchange Commission
            Fort Worth Regional Office
            801 Cherry Street, Suite 1900
            Fort Worth, TX 76102
            (817) 978-1409
            Email: fraserb@sec.gov

            Leslie J. Hughes (*pro hac* application granted)
            Attorneys for Plaintiff
            Securities and Exchange Commission
            Denver Regional Office
            1961 Stout Street, Suite 1700
            Denver, Colorado 80294
            (303) 844-1086
            Email: HughesLJ@sec.gov